Jonathan M. Herman
Texas State Bar No. 24052690
HERMAN LAW FIRM
1601 Elm Street, Suite 2002
Dallas, Texas 75201
Telephone: (214) 624-9805
Facsimile: (469) 383-3469
jherman@herman-lawfirm.com
*Counsel for Louisiana Health Service & Indemnity Company,*
*d/b/a Blue Cross and Blue Shield of Louisiana*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS, DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **REVOLUTION MONITORING, LLC,** | | **Case No. 18-33730-hdh** |
| **Debtor(s)** | § | |
| | | |
| **MedARC, LLC,** | § | |
| **Plaintiff(s)** | | **Chapter No.: 11** |
| | § | |
| **v.** | | |
| | § | **Adversary No.: 20-03112-hdh** |
| **ANTHEM, INC., ET AL.,** § | | |
| **Defendants** | § | |

§ § § § § § § §

## <u>DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO WITHDRAW THE REFERENCE</u>

Defendants Anthem, Inc.; Health Care Service Corporation, a Mutual Legal Reserve Company that Operates in Texas as Blue Cross and Blue Shield of Texas; Blue Cross and Blue Shield Healthcare Plan of Georgia, Inc.; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; Blue Cross and Blue Shield of South Carolina; Blue Cross and Blue Shield of Michigan; and BlueCross and BlueShield of Tennessee, Inc. (collectively, "Blue Plan Defendants"), by and through their undersigned attorneys, respectfully

file their Motion to Withdraw the Reference ("Motion"), of the adversary proceeding to the United

States Bankruptcy court for the Northern District of Texas, Dallas Division, Case No. 20-03112-

hdh (the "Adversary Proceeding"), pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal

Rules of Bankruptcy Procedure.[1]

---

[1] Fed. R. Bankr. P. 5011(a) This motion "shall be heard by a district Judge." Under Local Bankruptcy Rule 5011-1, motions for withdrawal must be filed with the clerk of the Bankruptcy Court but shall be directed to the District Court.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................... 3

      A.    MEDARC IS A COLLECTION AGENT AND ASSIGNEE OF A NON-DEBTOR THIRD PARTY. .................................................................................................................. 3

      B.    MEDARC'S CLAIMS AGAINST THE BLUE PLAN DEFENDANTS ARISE OUT OF BENEFIT DETERMINATIONS UNDER ERISA PLANS. ................................................... 4

III.  ARGUMENT AND AUTHORITIES ................................................................. 4

      A.    WITHDRAWAL OF THE REFERENCE HERE IS MANDATORY UNDER 28 U.S.C. § 157(d) ………..…………………………………………………………………………5

      B.    ALTERNATIVELY, THE COURT SHOULD PERMISSIVELY WITHDRAW THE REFERENCE BECAUSE THE *HOLLAND* FACTORS STRONGLY WEIGH IN THE BLUE PLAN DEFENDANTS' FAVOR. ............................................................................................ 7

            *1. MedARC's Complaint Asserts Only Non-Core Claims.* ......................................... 8

            *2. The Blue Plan Defendants Reserve the Right to Assert Their Seventh Amendment Right to a Jury Trial.* ................................................................................................ 9

            *3. The Remaining Holland Factors Weigh in Favor of Withdrawal.* ........................ 10

      C.    THE DISTRICT COURT SHOULD CONDUCT ALL PRETRIAL MATTERS........................ 10

IV.   CONCLUSION ................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Adler v. Walker (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, 455 B.R. 869 (E.D. La. 2011) ................................................................................................................. 11

*Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388 (5th Cir. 2001) ................................................................................................................... 12

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933 (N.D. Tex. Aug. 18, 2009) ........................................................................................................ 6

*Curtis v. Cerner Corp.*, No. 7:19-cv-00417, 2020 WL 1983937 (S.D. Tex. Apr. 27, 2020) .... 8, 9, 10, 11

*Curtis v. Loether*, 415 U.S. 189 (1974)........................................................................................ 9

*Great W. Sugar Co. v. Interfirst Bank, Dallas, N.A.*, No. 3-85-1755-H, 1985 WL 17671 (N.D. Tex. Nov. 7, 1985) .......................................................................................................... 6

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, No. BR 15-3229, 2016 WL 406959 (S.D. Tex. Feb. 3, 2016) ...................................................................................................................... 11

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985)................................... 8

*In re Clay*, 35 F.3d 190 (5th Cir. 1994) ................................................................................. 9, 10

*Kite v. Kite*, No. 2:13- CV-2131, 2014 WL 688196 (W.D. La. Feb. 13, 2014) .......................... 11

*Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200 (S.D. Tex. 2008) ....... 9

*Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.)*, 161 B.R. 21 (E.D. La. 1993) ..................................................................................................................... 6

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ......................................................................... 7

*Mirant Corp. v. S. Co.*, 337 B.R. 107 (N.D. Tex. 2006).............................................................. 9

*Mobley v. Quality Lease & Rental Holdings, LLC (In re Quality Lease & Rental Holdings, LLC)*, No. 14-60074, 2016 WL 416961 (Bankr. S.D. Tex. Feb. 1, 2016) ........................................ 9

*Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-CV-2205-D, 2012 WL 4442368 (N.D. Tex. Sept. 26, 2012)...................................................................................... 9

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ..................................................................... 7

*United States Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539 (N.D. Tex. 1992)............................................................................................................................. 6

*United States v. Johns-Manville Corp. (In re Johns–Manville Corp.)*, 63 B.R. 600 (S.D.N.Y. 1986) ..................................................................................................................................... 7

*Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987) ............................................................. 8

## **Statutes**

28 U.S.C. § 1331 ................................................................................................................... 2

28 U.S.C. § 1334(b) ............................................................................................................. 5

28 U.S.C. § 157 ............................................................................................................... 1, 12

28 U.S.C. § 157(a) ........................................................................................................ 1, 4, 5

28 U.S.C. § 157(c)(1) ......................................................................................................... 2, 8

28 U.S.C. § 157(d) .............................................................................................. ii, 2, 5, 7, 12

28 U.S.C. 1334 ..................................................................................................................... 1

29 U.S.C. § 1001(b) ............................................................................................................. 6

29 U.S.C. § 1132 ................................................................................................................... 1

29 U.S.C. § 1132(a) ............................................................................................................. 1

29 U.S.C. §§ 1001, *et seq.* .................................................................................................... 1

## **Rules**

Fed. R. Bankr. P. 5011 ......................................................................................................... ii

N.D. TX L.B.R. 5011-1 ........................................................................................................ ii

# I. INTRODUCTION

On September 18, 2020, Plaintiff MedARC, LLC, as collection agent for Jeffrey H. Mims, Liquidating Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC[2] ("MedARC"), commenced this Adversary Proceeding against the Blue Plan Defendants, alleging multiple violations arising under 29 U.S.C. §§ 1001, *et seq.*, of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, breach of contract, promissory estoppel, and quantum meruit. Under 28 U.S.C. § 157(a) and this District Court's Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc*, all proceedings arising in, or related to, a case under Title 11 are automatically referred to the Bankruptcy Judge.[3, 4]

The Blue Plan Defendants have not yet responded to MedARC's Original Complaint ("Complaint") and intend to file a Motion to Dismiss the Complaint. In the event the case proceeds following the Motion, the Blue Plan Defendants reserve the right to request a jury trial, if afforded that right under any of the non-ERISA claims. MedARC's claims in the Adversary Proceeding are not core proceedings, and the Blue Plan Defendants do not consent to the entry of final orders or judgments by the Bankruptcy Court.

The Complaint alleges bankruptcy jurisdiction under 28 U.S.C. § 157 and 28 U.S.C. § 1334. For its substantive causes of action, MedARC asserts several claims under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), including claims to recover health plan benefits under § 1132(a)(1)(B), and claims for restitution, injunctive, and declaratory relief for alleged breaches of fiduciary duty and procedural violations under § 1132(a)(2) and (a)(3), as well as state-law

---

[2] The bankruptcy debtors are collectively referred to as "Revolution."

[3] *See* Misc. Order No. 33 (August 3, 1984).

[4] This Motion is brought by the remaining Blue Plan Defendants after MedARC, on its own motions, dismissed the other listed Defendants.

claims for breach of contract, promissory estoppel, and quantum meruit. MedARC acknowledges that its claims are not core bankruptcy proceedings.[5] Because the Blue Plan Defendants do not consent to the entry of final judgment by the Bankruptcy Court, the District Court must conduct a *de novo* review,[6] and the reference to the Bankruptcy Court should be withdrawn.[7]

Since the majority of the federal claims in MedARC's Complaint are based on ERISA and because federal jurisdiction is premised on 28 U.S.C. § 1331, the Complaint is subject to mandatory withdrawal of the reference.[8] The issues raised in the Adversary Proceeding will require material consideration of ERISA, a non-bankruptcy federal law. In addition, with respect to the Blue Plan Defendants, certain of the claims for services allegedly rendered by Revolution likely involve government programs such as the federal Medicare Advantage program, the federal TRICARE program, and the Federal Employee Program (governed by FEHBA), which also involve complex non-bankruptcy federal laws. Therefore, as set forth in greater detail below, the issues raised in the Adversary Proceeding must be resolved by an Article III Court.

The Bankruptcy Court has not decided any substantive matters on these claims yet, and the most efficient use of judicial resources for the courts and the parties is for the District Court to conduct all proceedings in this case. The Blue Plan Defendants' Motion should therefore be granted.

---

[5] Complaint, ¶ 32.
[6] 28 U.S.C. § 157(c)(1).
[7] 28 U.S.C. § 157(d).
[8] 28 U.S.C. § 157(d).

## II. FACTUAL BACKGROUND

**A. MEDARC IS A COLLECTION AGENT AND ASSIGNEE OF A NON-DEBTOR THIRD PARTY.**

The Complaint alleges that "Defendants' misconduct forced Revolution to cease operations and seek relief under the Bankruptcy Code."[9] MedARC, however, is a third-party collection agent, and is not itself a fiduciary on behalf of Revolution's bankruptcy estate or a successor-in-interest to Revolution. Rather, MedARC alleges it acquired the right to pursue certain accounts receivable claims pursuant to Revolution's confirmed plan and an assignment from a different non-debtor, Revolution's former lender, Xynergy Healthcare Capital ("Xynergy").[10]

In fact, at least $1.7 million of the amount that MedARC is suing to collect in these cases is *not* being pursued on behalf of the bankruptcy estate at all, but, rather, on behalf of Xynergy. Xynergy assigned its rights to Revolution's health plan receivables to MedARC,[11] and any monies collected on a judgment against the Blue Plan Defendants in this Adversary Proceeding (net of professional fees) have virtually nothing to do with this bankruptcy case, do not materially belong to the bankruptcy estate, and must first be paid to Xynergy.[12] After Xynergy is paid, MedARC itself (for its own account) retains the vast majority of any additional proceeds collected, meaning that only a fraction of any recovery in this case would provide any conceivable benefit to Revolution's unsecured creditors.[13]

---

[9] Complaint at ¶ 92.

[10] ECF No. 1 at ¶ 94, referencing Liquidating Trust Agreement at Case No. 18-33730, ECF No. 146 at p. 8.

[11] Case No. 18-33730-hdh11, Dkt. No. 138, pp. 23-27 (Assignment & Payout Agreement).

[12] *Id.*

[13] Case No. 18-33730-hdh11, Dkt. No. 138, pp. 23-27 (describing percentage split between MedARC and Xynergy).

**B.    MEDARC'S CLAIMS AGAINST THE BLUE PLAN DEFENDANTS ARISE OUT OF BENEFIT DETERMINATIONS UNDER ERISA PLANS.**

Prior to its bankruptcy filing, Revolution allegedly submitted medical claims to the Blue Plan Defendants for payment of services allegedly provided to patients covered under health benefit plans administered by the Blue Plan Defendants.  the Blue Plan Defendants administer claims for benefits under health plans established and maintained by employers for the benefit of eligible employees and their dependents, typically pursuant to ERISA.[14]  MedARC now seeks additional payments on these claims (and on alleged accounts receivable which Xynergy claims it owns).

Because these proceedings involve claims regarding benefits due under health plans – plans governed by ERISA, Medicare Advantage, and/or TRICARE – these proceedings are not based on substantive bankruptcy law.  Instead, they are based on ERISA and should proceed before the District Court under controlling standards.

### III.  ARGUMENT AND AUTHORITIES

Congress provided the District Court with original jurisdiction in any or all cases under title 11 and vested the authority to the District Court judges to refer to bankruptcy judges "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11."[15]  Under this District Court's Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc*, all proceedings arising in, or related to, a case under title 11 are automatically referred to the Bankruptcy Judges.[16]

---

[14] Complaint, ¶ 43.
[15] 28 U.S.C. § 157(a).
[16] *See* Misc. Order No. 33 (August 3, 1984).

However, on timely motion of a party, a district court must, in some cases, withdraw a proceeding that has been referred to a bankruptcy court. The withdrawal becomes mandatory if the Court determines that resolution of the proceeding requires consideration of federal laws other than bankruptcy laws. Withdrawal may also be permitted based on good cause shown. Review of the proceedings here necessitates withdrawal under either standard.

## A. WITHDRAWAL OF THE REFERENCE HERE IS MANDATORY UNDER 28 U.S.C. § 157(d).

Under 28 U.S.C. § 1334(b), district courts have original jurisdiction of "all civil proceedings arising under title 11 or arising in or related to cases under title 11." Each district court may, however, "provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."[17] Pursuant to this authority, the United States District Court for the Northern District of Texas issued an order referring all bankruptcy cases filed in the district to the bankruptcy court.[18]

However, pursuant to 28 U.S.C. § 157(d):

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely notice of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.[19]

Withdrawal of the reference is clearly mandatory in this case. Under this Court's precedent, a motion to withdraw must be granted when: (1) the motion was timely filed; (2) a non-Bankruptcy Code federal law at issue (here, ERISA, as alleged by Plaintiff) has more than a *de*

---

[17] 28 U.S.C. § 157(a).

[18] *See* Misc. Order No. 33 (August 3, 1984).

[19] 28 U.S.C. § 157(d).

minimis effect on interstate commerce; and (3) the proceeding involves a substantial and material question of non-Bankruptcy Code federal law.[20]

First, this Motion is being filed prior to the Blue Plan Defendants' deadline for a responsive pleading and before any substantive proceedings. Courts have considered timely similar motions filed long after the complaint and summons.[21]

Second, MedARC pleaded numerous claims under ERISA, a federal statute, which, by its very objective, has more than a *de minimis* effect on interstate commerce. Congress' express objective when enacting ERISA was to "protect interstate commerce."[22] It is difficult to imagine any action involving ERISA that does not in some way substantially affect interstate commerce. Therefore, this adversary proceeding is precisely the sort of action that must be resolved by the District Court and withdrawn.

Third, the Complaint necessarily requires the Court to give "substantial and material consideration" to ERISA—a non-Bankruptcy Code federal law.[23] In Counts I through III, MedARC alleges that the Blue Plan Defendants violated multiple provisions of ERISA and that such purported violations entitle MedARC to relief under ERISA.[24] These allegations alone mandate withdrawal of the reference.[25]

---

[20] *United States Gypsum Co. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*), 145 B.R. 539, 541 (N.D. Tex. 1992); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09-CV-386-Y, 2009 WL 10684933, at *1 (N.D. Tex. Aug. 18, 2009).

[21] *See, e.g.,* Southern District of Texas General Order No. 2011–12, ⁋ 1 ("In an adversary proceeding, a party should move to withdraw the reference within 90 days of the complaint or notice of removal."); *Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc.* (*In re Liljeberg Enters., Inc.*), 161 B.R. 21, 27 (E.D. La. 1993) (finding the motion to withdraw reference timely when filed 52 days after debtor filed motion to assume an executory contract).

[22] 29 U.S.C. § 1001(b); *see, e.g., In re Liljeberg Enters., Inc.*, 161 B.R. at 27 ("antitrust claims, by their very nature, have a greater than *de minimis* effect on interstate commerce").

[23] MedARC concedes that this adversary proceeding is not a core bankruptcy proceeding as defined by 28 U.S.C. § 157(b)(2)(O). *See* Complaint at ¶ 7.

[24] Complaint, ¶¶ 96-133.

[25] *See Great W. Sugar Co. v. Interfirst Bank, Dallas, N.A.*, No. 3-85-1755-H, 1985 WL 17671, at *2 (N.D. Tex. Nov. 7, 1985) (holding that withdrawal of the reference was mandatory because the resolution of the adversary proceeding required consideration of ERISA); *see also In re Liljeberg Enters., Inc.*, 161 B.R. at 24 (withdrawing the reference when the case necessarily involved a determination of antitrust claims); *In re Nat'l Gypsum Co.*, 145 B.R. at 541-42

Indeed, ERISA provides a comprehensive scheme for the regulation and enforcement of employee benefit plans.[26] This dispute alleges issues with hundreds of discrete medical claims under various employee benefit plans with distinct terms of coverage and benefits, and MedARC has further alleged procedural violations in the Blue Plan Defendants' claims determinations under ERISA. Adjudicating the claims in this case will require the court to review and determine issues of, *inter alia*, plan coverage, purported procedural requirements and standards of review under ERISA, appropriate billing of medical claims under industry standards, and the appropriates rates for covered services – all under the shadow of "an enormously complex and detailed statute."[27] Because the Complaint necessarily requires the court to materially and substantially consider, interpret, and apply ERISA, withdrawal of the reference is mandatory.

In short, the test for mandatory withdrawal of the reference under Section 157(d) is satisfied. Thus, the Blue Plan Defendants' Motion should be granted.

**B.    ALTERNATIVELY, THE COURT SHOULD PERMISSIVELY WITHDRAW THE REFERENCE BECAUSE THE *HOLLAND* FACTORS STRONGLY WEIGH IN THE BLUE PLAN DEFENDANTS' FAVOR.**

Although mandatory withdrawal is required as demonstrated above, additionally and alternatively, the District Court may permissibly withdraw the reference for cause shown.[28] To determine whether there is "cause" for the district court to withdraw the reference, the Fifth Circuit has held that the court should consider whether:

---

(withdrawing the reference when the case necessarily involved a determination of patent claims); *United States v. Johns-Manville Corp.* (*In re Johns–Manville Corp.*), 63 B.R. 600, 602 (S.D.N.Y. 1986) (withdrawing the reference when the case involved CERCLA because it required "significant *interpretation* of federal laws that Congress [intended to be] decided by a district judge rather than a bankruptcy judge").

[26] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

[27] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, (1993) (describing ERISA).

[28] *See* 28 U.S.C. § 157(d).

(1) the underlying lawsuit is a non-core proceeding;

(2) a party has requested a jury trial;

(3) the bankruptcy process will be expedited;

(4) economical use of the debtor and creditor's resources is fostered;

(5) uniformity in bankruptcy administration will be achieved; and

(6) forum shopping and confusion will be reduced.[29]

Here, the *Holland* factors strongly weigh in favor of withdrawing the reference.

### *1. MedARC's Complaint Asserts Only Non-Core Claims.*

MedARC's Complaint concedes that all of its causes of action are "non-core matters," thus favoring withdrawal.[30] A proceeding is core *only if* "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise *only* in the context of a bankruptcy case."[31] Such is not the case here.

Here, Counts I through III of the Complaint are based on ERISA and Counts IV through VI are clearly based on state law.[32] MedARC does not allege a single cause of action invoking a substantive right created by federal bankruptcy law, nor do its allegations depend on the Bankruptcy Code for their existence. As a practical matter, because the Complaint asserts **only** non-core claims, the bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court for *de novo* review.[33] The Blue Plan Defendants do not consent to entry of final judgment by the Bankruptcy Court. Therefore, to avoid the duplicative and wasteful efforts

---

[29] *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985).

[30] Complaint, ¶ 32; *see, e.g.*, *Curtis v. Cerner Corp.*, No. 7:19-cv-00417, 2020 WL 1983937, at *2 (S.D. Tex. Apr. 27, 2020) (withdrawing the reference *and* all pretrial matters upon review of the six *Holland* factors, and concluding that "[w]here the majority of claims are noncore, withdrawal of the reference is favored") (internal quotation omitted).

[31] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (emphasis added).

[32] Complaint, ¶¶ 96-156

[33] *Id.* at 32; 28 U.S.C. § 157(c)(1).

that would result if the Bankruptcy Court were to hear these disputes and then issue a report and recommendation for *de novo* review by the District Court, this Court should find the first *Holland* factor weighs in favor of withdrawal.

> ### 2.   The Blue Plan Defendants Reserve the Right to Assert Their Seventh Amendment Right to a Jury Trial.[34]

When a party that is entitled to a jury trial makes a proper request and does not consent to a jury trial before the bankruptcy court, "the bankruptcy court must recommend that the adversary proceeding be withdrawn to the district court."[35]

MedARC's breach-of-contract and other state-law claims for money damages generally give rise to a jury trial right.[36]   Further, to the extent that a portion of MedARC's claims are equitable in nature, the Supreme Court has made clear that "[i]f [a] legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact."[37]   In the event these claims are not dismissed, the Blue Plan Defendants reserve the right to exercise their rights at the appropriate time to demand a jury trial to the greatest extent permissible by law, and the second factor therefore favors the withdrawal of the reference.[38]

---

[34] U.S. CONST. amend. VII.

[35] *Mobley v. Quality Lease & Rental Holdings, LLC* (*In re Quality Lease & Rental Holdings, LLC*), No. 14-60074, 2016 WL 416961, at *5 (Bankr. S.D. Tex. Feb. 1, 2016) (concluding that because the bankruptcy court *must* recommend withdrawal, "the substantive issues raised in the motions for jury trial and motions to strike . . . [are] best left to the court which will conduct the trial on the merits.") (citing *In re Clay*, 35 F.3d 190, 196-97 (5th Cir. 1994), *report and recommendation adopted*, No. AP 14-6005, 2016 WL 11644051 (S.D. Tex. Feb. 29, 2016)); *Curtis*, 2020 WL 1983937, at *4.

[36] *In re Clay*, 35 F.3d at 194; *Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (mem. op.) (Rosenthal, J.) (finding a party was entitled to a right to a jury trial regarding a joint liability claim for money damages).

[37] *Curtis v. Loether*, 415 U.S. 189, 196 n. 11 (1974).   While there is no right to jury trial for the ERISA claims, Blue Cross Blue Shield is entitled to a jury trial on the breach-of-contract claim.   *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-CV-2205-D, 2012 WL 4442368, at *2 (N.D. Tex. Sept. 26, 2012).

[38] *See Mirant Corp. v. S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) ("[t]he conclusions the court has reached that the action contains non-core claims and that [Blue Cross Blue Shield] is entitled to trial by jury as to certain claims standing alone suggest that there should be a withdrawal of the reference.").

### 3.   *The Remaining Holland Factors Weigh in Favor of Withdrawal.*

The other *Holland* factors—expediting the bankruptcy process, uniformity in bankruptcy administration, economical use of the debtor and creditor's resources, and reducing confusion and forum shopping—also weigh in favor of withdrawal.   The entirely non-core nature of the Complaint means that the Bankruptcy Court's expertise is not necessary and that a denial of the Blue Plan Defendants' Motion is certain to result in a costly, duplicative *de novo* review.[39] Moreover, there are no facts to support the notion that a split proceeding will somehow reduce confusion or achieve uniformity.   In contrast, granting the Blue Plan Defendants' Motion will operate to expedite the resolution of the dispute and, ultimately, the administration of the bankruptcy estate.[40]

Finally, MedARC has filed similar suits against other health plans on alleged accounts receivable in the District Court, and there is no evidence of forum shopping by the Blue Plan Defendants, as there have been no substantive rulings on any of these matters.   The balance of all six *Holland* factors weigh in support of withdrawing the reference, and the District Court should grant the Blue Plan Defendants' Motion for this additional reason.

### C.   THE DISTRICT COURT SHOULD CONDUCT ALL PRETRIAL MATTERS.

All pretrial matters should be decided by the District Court as well.   In determining whether the District Court should retain all pretrial matters, courts have considered the following factors: (1) does referral promote judicial efficiency; (2) is the Bankruptcy Court familiar with the

---

[39] *See In re Clay*, 35 F.3d at 195 ("[i]f anything, jury trials in bankruptcy courts would impede efficiency. These speedy courts were not designed to conduct long jury trials, and most bankruptcy judges and lawyers are unused to jury procedures.").

[40] *Curtis*, 2020 WL 1983937, at *4 (holding that "judicial and litigant economy favor determination of the claims by the District Court once").

allegations; and (3) do the allegations require interpretation of federal bankruptcy law?[41] Again, the factors weigh in favor of withdrawal from the Bankruptcy Court to the District Court.

Judicial efficiency is better served by the District Court presiding over pretrial matters concerning MedARC's ERISA and state-law claims, which the District Court ultimately must decide on the merits. As described above, this case involves complex issues regarding medical billing, reasonable charges for services under hundreds of distinct medical plans,[42] ERISA standard-of-review and procedural issues, and overcharges. Through pretrial proceedings, the District Court becomes familiar with the parties and allegations, which leads to a more efficient trial administration.[43] Here, given the complex factual and legal issues involved, having the District Court decide pretrial matters will give the parties an opportunity to educate the Court on these important issues prior to trial.

The factors that would favor the bankruptcy court retaining jurisdiction over pretrial matters are not present here. The Bankruptcy Judge has not yet decided substantive issues regarding MedARC's claims against the Blue Plan Defendants, and there is no substantive bankruptcy law at issue in this case. As stated above, MedARC's claims do not involve even a single bankruptcy claim or issue and instead implicate complex area of non-bankruptcy federal law – ERISA. Even MedARC, a third-party collection agent (not a successor to Revolution),

---

[41] *See Curtis*, 2020 WL 1983937, at *5; *see also Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, No. BR 15-3229, 2016 WL 406959, at *2 (S.D. Tex. Feb. 3, 2016) (exercising its discretion to retain all pretrial matters as a means to maintain an active role in the case, gain familiarity with the issues that will be presented for trial, and ensure the efficient use of judicial resources).

[42] The Blue Plan Defendants' initial review indicates that Revolution's charges are extraordinarily high for the services rendered. For example, Revolution's charges for monitoring a patient in surgery often exceeded the charges of the surgeon performing the surgery.

[43] *See, e.g., Kite v. Kite*, No. 2:13- CV-2131, 2014 WL 688196, at *5 (W.D. La. Feb. 13, 2014) ("[W]ithdrawing the case at this stage provides the [district] court with the best opportunity to familiarize itself with the legal and factual issues of the case in preparation for trial, and also seems to be the most efficient use of the time of both the court and the litigants."); *Adler v. Walker (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, 455 B.R. 869, 878 (E.D. La. 2011) (holding that "it would be inefficient to allow pretrial motion practice to continue in the bankruptcy court, delaying the eventual referral of claims to this Court").

concedes that all of its claims against the Blue Plan Defendants are non-core within the meaning of 28 U.S.C. § 157.[44]  While a small fraction of any recovery by MedARC could benefit unsecured creditors of Revolution (after payment of substantial prior amounts to professionals, Xynergy, and MedARC itself), this remote economic connection between MedARC's action and the Revolution bankruptcy proceedings does not implicate the Bankruptcy Court's unique expertise regarding federal bankruptcy law and does not warrant continued oversight by the Bankruptcy Court.[45]

In sum, because of the necessity for *de novo* review, the efficiency in conducting pretrial proceedings before the District Court when the Bankruptcy Court has not yet presided over any aspect of the substantive causes of action, and the complete dissociation of all issues from bankruptcy law, the District Court should therefore withdraw all proceedings.

## IV.  CONCLUSION

The District Court should grant the Blue Plan Defendants' Motion to Withdraw the Reference pursuant to 28 U.S.C. § 157(d).  The claims set forth by MedARC mandate withdrawal of the reference, and, alternatively, a review of the *Holland* factors indicates that the District Court should exercise its discretionary power and permissively withdraw the reference.  Additionally, given the nature and circumstances of MedARC's claims, the District Court should retain all pretrial matters.

---

[44] Complaint, ¶ 32.

[45] The rationale for the Bankruptcy Court's involvement in this litigation is made even more tenuous by the timing of MedARC's suit.  Revolution confirmed its Chapter 11 Plan, and the plan became effective more than a year before MedARC filed its complaint.  *See* Dkt. No. 139 (Confirmation Order).  As the Fifth Circuit has held in dismissing a post-effective date dispute for lack of subject matter jurisdiction, bankruptcy courts' expansive jurisdiction over matters "related to" a bankruptcy case narrows after emergence from Chapter 11.  *See Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan….  No longer is expansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize.") (internal citation omitted).

**WHEREFORE**, the Blue Plan Defendants pray that the Court withdraw the order of the reference to the Bankruptcy Court to the United States District Court for the Northern District of Texas, Dallas Division, and for such other and further relief to which it may be justly entitled.

Respectfully submitted,

By: */s/ Jonathan M. Herman*
    Jonathan M. Herman
    Texas State Bar No. 24052690
    Allison N. Pham
    Texas State Bar No. 24053399
    HERMAN LAW FIRM
    1601 Elm Street, Suite 2002
    Dallas, Texas 75201
    Telephone: (214) 624-9805
    Facsimile: (469) 383-3469
    jherman@herman-lawfirm.com
    apham@herman-lawfirm.com

    *Counsel for Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana*

    and

By: */s/ Thomas C. Hardy (WEP, JMH)*
    Martin J. Bishop
    Texas State Bar No. 24086915
    Michael P. Cooley
    Texas State Bar No. 24034388
    REED SMITH LLP
    2850 N. Harwood Street, Suite 1500
    Dallas, Texas 75201
    Telephone: (469) 680-4200
    Facsimile: (469) 680-4299
    mbishop@reedsmith.com
    mpcooley@reedsmith.com

Daniel J. Hofmeister
Admitted pro hac vice
Thomas C. Hardy
Admitted pro hac vice
Lawrence M. Benjamin
Admitted pro hac vice
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
dhofmeister@reedsmith.com
thardy@reedsmith.com
lbenjamin@reedsmith.com

*Counsel for Defendants Anthem, Inc., Health Care Service Corporation, a Mutual Legal Reserve Company that Operates in Texas as Blue Cross and Blue Shield of Texas, and Blue Cross and Blue Shield Healthcare Plan of Georgia, Inc.*

and

By: */s/ Michael C. Drew (WEP, JMH)*
    Michael C. Drew
    JONES WALKER, LLP
    201 St. Charles Avenue, Suite 5100
    New Orleans, Louisiana 70170
    Telephone: (504) 582-8000
    Facsimile: (504) 582-8583
    mdrew@joneswalker.com

*Counsel for Blue Cross and Blue Shield of South Carolina*

and

By: */s/ Michael Ossy (WEP, JMH)*
    Michael Ossy
    BLUE CROSS BLUE SHIELD OF MICHIGAN
    600 Lafayette East, MC 1925
    Detroit, Michigan 48226
    Telephone: (313) 949-7145
    MOssy@bcbsm.com

*Counsel for Blue Cross Blue Shield of Michigan*

and

By: */s/ Bridget B. Vick (WEP, JMH)*
John B. Shely
Texas State Bar No. 18215300
Bridget B. Vick
Texas State Bar No. 24069444
HUNTON ANDREWS KURTH LLP
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
JohnShely@HuntonAK.com
BridgetVick@HuntonAK.com

*Counsel for BlueCross BlueShield of Tennessee, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 23, 2020, I conferred by email with counsel for Plaintiff regarding this Motion and the requested relief.  Plaintiff counsel advises that the Motion is opposed.

*/s/ Jonathan M. Herman*
Jonathan M. Herman

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020, I electronically filed the foregoing document with the clerk of court for the U.S. Bankruptcy Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who are known "Filing Users:"

Lewis T. LeClair
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

Nicholas A. Foley
8146 San Fernando Way
Dallas, Texas 75218

*/s/ Jonathan M. Herman*
Jonathan M. Herman